IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| STEVEN COLLINS | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 05 C 6738 |
| v. | ) |
| | ) HONORABLE DAVID H. COAR |
| NAPERVILLE #203 COMMUNITY DISTRICT | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Steven Collins is suing his former employer, Naperville #203 Community District ("Naperville"), for violation of the Americans with Disabilities Act ("ADA") and Title VII of the Civil Rights Act of 1964 ("Title VII"). Before this Court are Naperville's motion for summary judgment on both Mr. Collin's disability discrimination claim and his racial discrimination claim and Mr. Collin's cross-motion for summary judgment. For the reasons stated in the opinion below, defendant's motion is granted and plaintiff's motion is denied.

**I.  FACTS**

The following facts are undisputed. Steven Collins was first diagnosed with post traumatic stress disorder ("PTSD") in 1997 after an extremely heavy door closed on Mr. Collins' hand, causing him severe damage to his hand and finger and causing his PTSD.[1] He has also been diagnosed with anxiety. Over the years, Mr. Collins has worked despite having significant

---

[1] Mr. Collin's hand and finger injuries are not the subject of his disability discrimination complaint.

pain in his hand and finger. In May of 2005, he underwent surgery and now his hand is healed completely. However, Mr. Collins' psychiatric disorders still sometimes cause him to breathe with difficulty and experience increased anxiety. He relaxes himself by breathing deeply and closing his eyes or by taking medication such as Valium and Zoloft. If his medication is unavailable and he experiences a triggering event, Mr. Collins simply takes deep breaths and shuts his eyes, thereby relaxing himself. Over the years, Mr. Collins has become accustomed to relaxing himself and has learned to function in his daily life without incident. He is able to cook and clean, care for his pre-teen son and maintain relationships with his wife, sons and father. Mr. Collins continues to relax himself by taking medication, closing his eyes and taking deep breathes, and he receives ongoing psychiatric treatment by health professionals.

Naperville #203 Community District ("<u>Naperville</u>") employs full-time custodians and substitute custodians to service twenty-one schools in its district. Although Mr. Collins originally applied for the position of full-time custodian, he received an unfavorable review during his interview, and was hired by Naperville only as a substitute custodian on November 3, 2004. Mr. Collins was advised that the best way to gain a full-time custodian position was to work as a substitute custodian because it would give Naperville a chance to observe his work performance and become familiar with him. Naperville hires most of its full-time custodians from its pool of substitute custodians. Substitute custodians do not work regularly; they only worked when they are called in to substitute for a full-time custodian or to fill an increased temporary need.

In his role as a substitute custodian, Mr. Collins was called to work when full-time custodians were unavailable or when Naperville had need for more assistance. In 2005,

complaints were made about Mr. Collins' job performance. On January 28, 2005, the head custodian at a school where Mr. Collins was working notified Mr. Collins by letter that he had received reports that Mr. Collins had been leaving work three to four hours early on a regular basis. When he approached Mr Collins to talk about the letter, his work performance and some disputed time sheets, Mr. Collins indicated that he was stressed out, was having an attack and had to leave. He told the head custodian at that time that he had PTSD. Afterwards, Mr. Collins was transferred to another Naperville school.

After that incident, Mr. Collins continued to work sporadically for Naperville. Sometimes when he was called for work, he would indicate that he unavailable; other times, he would go to work. On May 31, 2005, Mr. Collins had a second panic attack. This attack was caused by a bad experience with a full-time employee at the school where he was then assigned. The employee, "Tom", brought a dog with him to work, but left the dog in his vehicle. When Mr. Collins attempted to exit the school to go home, Tom told him not to exit out of that door because his dog was outside and it had something against African-Americans. Mr. Collins continued despite the "warning." Once he exited, Mr. Collins noticed a large dog viciously barking at him. Mr. Collins was afraid and began to get anxious. He reentered the building, exited from another door and went home. After this incident, Mr. Collins nonetheless continued to work for Naperville and demonstrated interest in being employed as a full-time custodian.

On June 14, 2005, Mr. Collins resigned his position as a substitute custodian. On June 29, 2005, Mr. Collins filed an Equal Employment Opportunity Commission charge of discrimination with the Illinois Department of Human Rights alleging that he was constructively discharged on the basis of his race and his disability in violation of Title VII of the Civil Rights Act of 1964

and the Americans with Disabilities Act of 1990, respectively.  He gave the date of June 22, 2005 as the date of his constructive termination.

## II. STANDARD OF REVIEW

Summary judgment is only appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A genuine issue of material fact exists only if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  When reviewing a motion for summary judgment, the court must view the facts in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor.  See Schuster v. Lucent Technologies, Inc., 327 F.3d 569, 573 (7th Cir. 2003).

The movant bears the burden of establishing that no genuine issue of material fact exists.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  If the movant meets this burden, the non-movant must set forth specific facts demonstrating that there is a genuine issue for trial.  Fed. R. Civ. P. 56(e); Celotex, 477 U.S. at 324.  To successfully oppose the motion, the non-movant must designate these facts in affidavits, depositions, answers to interrogatories, or admissions; the non-movant cannot rest on the pleadings alone.  Celotex, 477 U.S. at 324.  Under the Local Rules, the non-movant must file the opposing affidavits and other materials described above, a memorandum of law in opposition to the motion, and a concise statement responding to

each of the movant's facts and alerting the Court to additional material facts.[2]  See Local Rule 56.1(b).

Where, as here, the non-movant fails to respond to the motion for summary judgment, the movant's version of the facts are deemed admitted.[3]  See Local Rule 56.1(b)(3)(B); Smith v. Lanz, 321 F.3d 680, 683 (7th Cir. 2003) ("[A] failure to respond by the non-movant as mandated by the local rules results in an admission.").  Summary judgment then will be entered in the movant's favor *if*, using the standard outlined above, such a ruling is appropriate.  See Fed. R. Civ. P. 56(e) ("If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party").

**III.    ANALYSIS**

   **A.    ADA claim**

A plaintiff with an ADA claim who seeks to avoid summary judgment "must demonstrate that there is at least a genuine issue of material fact as to whether he is disabled, whether he can perform the essential functions of the position, and whether he has suffered an adverse employment action because of his disability."  Kupstas v. City of Greenwood, 398 F.3d 609, 611 (7th Cir. 2005).

---

[2] Given that the plaintiff is *pro se*, this Court, in its discretion, has afforded the plaintiff considerable leeway in not adhering to this Court's local rules.

[3] Although Mr. Collins did file what was captioned "Plaintiff's Motion for Summary Judgment" and the court accepted the filing as such, and also as a response to the defendant's motion for summary judgment, that filing does not set forth any version of the facts relevant to this case.  Therefore, this Court accepted the defendant's version of the facts as put forth in its motion for summary judgment, but only after scrutinizing the deposition testimony relied on by the defendant.

Mr. Collins states in his *pro se* complaint that he has been the victim of disability employment discrimination because of his PTSD and anxiety. Under the ADA, the term "disability" is defined as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. §12102(2). Mr. Collins has submitted a Social Security Disability Insurance Notice of Award that indicates he became "disabled" under their rules on June 15, 2005. There is no mention on that award notice of what the disability is that Mr. Collins has been found to suffer from since June15, 2005. Even if this Court were to accept that Mr. Collins was actually "disabled" or had a record of disability, it would only do so for the period of time beginning on June 15, 2005. Mr. Collins must still prove, or at least offer some factual basis for his disability, as defined by the ADA, during his employment with Naperville.

As to before June 15, 2005, Mr. Collins relies upon letters from a doctor stating that he suffered from PTSD, major depression and anxiety reactions with panic. The Supreme Court has held that medical evidence of an impairment alone is insufficient to prove disability status. Toyota Motor Mfg., Ky., Inc. V. Williams, 534 U.S. 184, 198 (2000). Instead, a claimant must offer evidence that the limitation caused by the impairment is substantial. Id. Mr. Collins has not offered any such evidence of substantial limitation caused by his medical impairments. In fact, Mr. Collins testified in his deposition that he is able to function in his daily life; he cooks and cleans when necessary, watches his eleven year old son, helps him with homework and even checks in on his ailing father from time to time. He never testified that he could not perform his custodial duties or was experiencing difficulty due to his psychological impairments. Instead,

Mr. Collins gave deposition testimony that he has worked in spite of his psychological impairments. He has held two jobs since being diagnosed with PTSD in 1997 and has never alleged that he was unable to work because of these disorders. He even continued to work for Naperville after the two panic attacks. The cumulative effect of all the evidence tends to show that Mr. Collins was not limited at all in performing life's essential functions.

The letters made by a physician offered by Mr. Collins as proof of his disability are dated in July of 2005. Although they list Mr. Collins' medical impairments, the letters do not explain how Mr. Collins is substantially limited in the performance of daily life activities or work activities. In short, Mr. Collins has not offered any facts upon which a reasonable fact-finder could conclude that he was disabled under the ADA definition during his employment with Naperville.

Nor has Mr. Collins offered any facts whatsoever to support an inference that he suffered an adverse employment action on account of his disability. In his *pro se* complaint, Mr. Collins alleges that he was constructively terminated on June 22, 2005 due to Naperville's failure to assign him any work after June 6, 2005. However, he has not alleged or demonstrated that Naperville's failure to assign him work after June 6, 2005 was any different than any other temporary lapse in work for a substitute custodian.

Futhermore, deposition testimony and various exhibits show that Mr. Collins formally resigned by written communication on June 14, 2005. That is one day before he was found to be disabled and seven days before the date of his alleged constructive termination. Mr. Collins told a supervisor about his PTSD and anxiety on January 28, 2005, but he has not alleged that he was subjected to any adverse employment action by that supervisor or as a result of his declaration.

He has not alleged that his subsequent transfer to another school was adverse or that it was an unordinary transfer. Even after the unpleasant incident with the dog, Mr. Collins continued to work for Naperville. In short, Mr. Collins has not offered any facts from which a reasonable fact-finder could conclude that he was 1) discriminated against, 2) discriminated against on account of his PTSD and anxiety, or 3) that his PTSD and anxiety were a disability as defined by the ADA..

Mr. Collins checked a box on his *pro se* complaint form indicating that Naperville failed to accommodate his disabilities. To make a prima facie case for failure to reasonably accommodate, a plaintiff must show that (1) he was disabled; (2) his employer was aware of his disability; and (3) he was a qualified individual with a disability who could perform the essential functions of the position, with or without reasonable accommodation. McPhaul v. Bd. of Comm'rs of Madison County, 226 F.3d 558, 563 (7th Cir. 2000). As discussed above, Mr. Collins cannot establish that he was disabled as defined by the ADA based on the facts presented to this Court. Therefore he cannot make out a prima facie case of discrimination for failure to reasonably accommodate.

### B. Title VII Racial Discrimination Claim

In an employment discrimination case, the plaintiff may proceed under either the direct or indirect methods to prove his allegations of discrimination. See Cerutti v. BASF Corp., 349 F.3d 1055, 1060 (7th Cir. 2003). Under the direct method of proof, a plaintiff may show, by way of direct or circumstantial evidence, that the employer's decision to take an adverse job action was motivated by an impermissible purpose, such as race. Id. at 727. Direct evidence is evidence that, if believed by the trier of fact, would prove discriminatory conduct on the part of

the employer.  See Rogers v. City of Chicago, 320 F.3d 748, 753 (7th Cir. 2003).  The indirect method, also called the burden-shifting method, requires the plaintiff first to make out a prima facie case of discrimination through establishment of the following four factors: (1) plaintiff had membership in a protected class under Title VII; (2) plaintiff was meeting the employer's legitimate employment expectations; (3) plaintiff suffered an adverse employment action; (4) similarly-situated employees outside of the protected class were treated more favorably by the employer.  If a plaintiff proceeding under the indirect method of proof fails to establish all four factors in the prima facie case, summary judgment should be entered for the defendant.  If the plaintiff establishes the prima facie case, the burden shifts to the defendant to come forward with a legitimate, non-discriminatory reason for the adverse employment action.  If the defendant offers a legitimate, non-discriminatory reason for the adverse employment action, the burden returns to the plaintiff to "rebut that explanation by presenting evidence sufficient to enable a trier of fact to find that the employer's proffered explanation is pretextual [i.e., a lie]."  Peele v. Country Mut. Ins. Co., 288 F.3d 319, 326 (7th Cir. 2002).

      Mr. Collins has not articulated under which method he seeks to establish his claim.  Therefore, this Court will analyze his claim under both methods.  As to the direct method of proving racial discrimination, other than the fact that he is African-American, Mr. Collins has not offered one single piece of evidence that would lead a reasonable fact-finder to determine any of Naperville's decisions were motivated by race.

      Similarly, Mr. Collins has not put forth facts to indirectly establish racial discrimination.  The first factor is present here; Mr. Collins is an African American and thus is a member of a protected class under Title VII.  The second factor is also present; Naperville itself has put forth

sufficient facts to determine that Mr. Collins met their legitimate expectations because they continued to employ him as a substitute custodian.

As to the third factor, whether plaintiff suffered an adverse employment action, the record is clear that Mr. Collins was not hired as a full-time employee or ever promoted. However, it is not clear at all that Mr. Collins was the victim of constructive termination. He resigned himself and his job of substitute custodian was one where Naperville only called him when they needed him. Mr. Collins also testified that at times he would not go to work when Naperville called. Instead, he would tell them that he was unavailable.

The most glaring absence from Mr. Collins' indirect racial discrimination claim is that he has not alleged nor put forth any evidence that any non-African American (or any non-minority) similarly-situated employee was treated more favorably than he. Evidence that a similarly-situated employee outside of the protected was treated more favorably by the employer is an essential part of a Title VII claim of indirect discrimination. Its absence is fatal to Mr. Collins' claim.

In sum, having failed to offer any evidence that Naperville's employment decisions regarding Mr. Collins were motivated by race and having failed to present more favorable treatment of non-African American similarly-situated employees by Naperville, Mr. Collins' claim of racial discrimination under Title VII must fails.

**IV. CONCLUSION**

For the foregoing reasons, defendant's motion for summary judgment is granted and plaintiff's cross-motion for summary judgment is denied.

Enter:

/s/ David H. Coar
_____
David H. Coar
United States District Judge

Dated: **October 10, 2006**